UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WES BECKMAN,

Plaintiff,

v.

FIRST NATIONAL BANK OF AMERICA,

Defendant.
_________________________________/

Case No. 1:26-cv-1433

Hon. Hala Y. Jarbou

**OPINION**

Plaintiff Wes Beckman brings this lawsuit against his former employer, Defendant First National Bank of America (FNBOA), alleging a national origin discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e *et seq*. (Count I); a race and national origin discrimination claim under Michigan's Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101 *et seq*. (Count II); a race discrimination claim under 42 U.S.C. § 1981 (Count III); and retaliation claims under the ELCRA (Count IV), 42 U.S.C § 1981 (Count V), Title VII (Count VI), the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*. (Count VII), Michigan's Persons with Disabilities Civil Rights Act (PWDCRA), Mich. Comp. Laws § 37.1101 *et seq*. (Count VIII), and the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. (Count IX). FNBOA has moved to dismiss the retaliation claims (Counts IV through IX) for failure to state a claim (ECF No. 5). For the reasons explained below, the Court will deny the motion to dismiss.

## I. BACKGROUND

For the purposes of this motion, the Court accepts as true the following allegations from the complaint. Beckman worked as a property tax analyst for FNBOA from November 1, 2023, to March 25, 2024. (*See* Compl. ¶¶ 11, 27, ECF No. 1.) Beckman is Hispanic and Mexican. (*Id.* ¶ 10.) He is also a cancer survivor who continues to undergo treatment for cancer, and has an eye impairment. (*Id.* ¶¶ 13–14.) In December of 2023, Beckman asked FNBOA for time off so he could attend a medical appointment related to his cancer treatments and eye impairment, framing his request as one for an accommodation under the ADA. (*See id.* ¶ 15.) FNBOA did not engage the process for accommodations requests or give him medical leave, and instead required him to use his paid time off for the appointment. (*Id.* ¶ 16.) The following month, FNBOA's operations manager, Adrienne Hansen, told Beckman he should have been available to address a work matter during one of his medical appointments. (*Id.* ¶ 17.)

On March 12, 2024, Beckman requested additional time off for medical appointments, again framing his request as one for a reasonable accommodation, but FNBOA did not address the request or begin the accommodations process. (*Id.* ¶¶ 18–19.) Soon after, management began to raise various issues with Beckman's work, accusing him of violating FNBOA's dress code, failing to take notes, and other infractions that had not been raised before. (*Id.* ¶ 20.) Beckman's white coworkers did not face this increased scrutiny. (*Id.* ¶ 21.) Moreover, Beckman did not receive pay for attending a training lunch while his white coworkers did, and Beckman was not allowed to work for pay during lunch or work from home, while his white coworkers were. (*Id.*) The same month, Beckman overheard a conversation in which a white coworker said that "Black and Hispanic people from the Mexican border have diseases such as Ebola and are a stain on society." (*Id.* ¶ 22.) Beckman told the coworker that his statement was false, and the coworker called him

a "prick." (*Id.*) Hansen, the operations manager, was present but did not say anything. (*See id.* ¶ 24.)

On March 25, 2024, Beckman met with Hansen and told her that he had been subject to disparate treatment based on his ethnicity. Specifically, he noted "that he was not allowed to work through lunch, was denied pay for attending a training luncheon, was not allowed to work remotely, and was scrutinized more" than his white coworkers. (*Id.* ¶ 23.) Beckman also discussed the coworker's racist statements; Hansen simply responded that she had not been the one who made the statements. (*Id.* ¶ 24.) Later that day, Hansen terminated Beckman's employment with FNBOA. (*Id.* ¶ 27.)

## II. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim if it fails "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.* at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017).

## III. ANALYSIS

As an initial matter, the parties disagree about the pleading standard for retaliation claims. Hansen contends that it is sufficient for him to simply allege that FNBOA acted with a retaliatory motive, because states of mind can be alleged generally. *See* Fed. R. Civ. P. 9(b). FNBOA, on the other hand, argues that Hansen must allege facts from which one can draw a reasonable inference that FNBOA acted with a retaliatory motive. FNBOA is correct. It is true, as Hansen points out, that a plaintiff need not establish a prima facie case of retaliation to overcome a motion to dismiss. *See Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) (discrimination claim); *Crowder v. Railcrew Xpress*, 557 F. App'x 487, 492 (6th Cir. 2014) (applying *Keys* to retaliation claim). However, "although the . . . Complaint need not present detailed factual allegations, it must allege sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that [the defendant] discriminated [or retaliated] against [the plaintiff]." *Keys*, 684 F.3d at 610 (cleaned up); *see also Washington v. First Nat'l Bank of Penn.*, 179 F.4th 1008, 1016 (6th Cir. 2026) (same). Thus, the Court does not accept as true the conclusory allegation that FNBOA acted out of a retaliatory motive; instead, that motive must be reasonably inferable from the other facts alleged.

Hansen attempts to resist this conclusion by pointing to *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002), where the Supreme Court held that a plaintiff had sufficiently alleged a discriminatory motive merely by stating "that he had been terminated on account of his national origin in violation of Title VII and on account of his age in violation of the ADEA." But the Sixth Circuit acknowledged *Swierkiewicz*'s holding in *Keys* and *Washington*, and both times reiterated that a discriminatory motive cannot be alleged in a conclusory manner—instead, the alleged facts must create the reasonable inference that such a motive existed. *See Keys*, 684 F.3d at 609–10;

*Washington*, 179 F.4th at 1013–15. Because *Keys* and *Washington* are binding precedent, the Court must apply the standard they articulate.

Moving now to Beckman's specific allegations, FNBOA has moved to dismiss Beckman's claims for retaliation under the ELCRA, § 1981, Title VII, the ADA, the PWDCRA, and the FLSA. The Court will address each claim in turn.

*ELCRA*. FNBOA argues that Beckman has not stated a retaliation claim under the ELCRA because he has not alleged protected activity, employer notice, or causation. The ELCRA prohibits retaliation against a person because they oppose a violation of the ELCRA. *El-Khalil v. Oakwood Healthcare, Inc.*, 934 N.W.2d 665, 670 (Mich. 2019) (citing Mich. Comp. Laws § 37.2701). Beckman alleges that he told Hansen he was being treated differently from his white coworkers, including not being allowed to work through lunch, not being paid for a training luncheon, not being allowed to work remotely, facing harsher scrutiny, and enduring racist comments. By reporting alleged discrimination, Beckman opposed a violation of the ELCRA. And FNBOA was on notice of Beckman's protected activity because he made this report to a supervisor. *Cf. Perez v. Ford Motor Co.*, No. 249737, 2006 WL 1540764, at *2 (Mich. Ct. App. June 6, 2006) ("The employee gives the employer actual notice if she complains about the harassment to higher management.").

As to causation, a very short time elapsed between Beckman's protected activity and his termination later that day. "A causal connection can be established through circumstantial evidence, such as close temporal proximity between the protected activity and adverse actions . . . ." *Rymal v. Baergen*, 686 N.W.2d 241, 257 (Mich. Ct. App. 2004). Although temporal proximity is often itself insufficient to support an inference of causation, it can be sufficient if the time between protected activity and adverse action is short enough: "if an employer immediately

retaliates against an employee upon learning of his protected activity, the employee would be unable to couple temporal proximity with any such other evidence of retaliation because the two actions happened consecutively, and little other than the protected activity could motivate the retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008); *see also Watkins v. Saginaw's Famous Fried Chicken, LLC*, No. 337288, 2018 WL 2165356, at *5 (Mich. Ct. App. May 10, 2018) (applying *Mickey* to ELCRA claim). The fact that Beckman's termination occurred immediately after his protected activity supports the inference that FNBOA had a retaliatory motive. Thus, Beckman has stated an ELCRA claim.

*Section 1981 and Title VII*. The analysis for Beckman's § 1981 and Title VII claims is essentially the same as the ELCRA analysis. Employment discrimination based on race or ethnicity violates both § 1981 and Title VII, so Beckman's report to Hansen was also protected activity under those statutes. *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 445 (2008) (section 1981); *Laster v. City of Kalamazoo*, 746 F.3d 714, 732 (6th Cir. 2014) (Title VII). Because FNBOA terminated Beckman on the same day it received notice of his protected activity, once again a reasonable inference can be drawn that FNBOA acted with a retaliatory motive.

*ADA and ELCRA*. Beckman argues that FNBOA retaliated against him for requesting time off to attend medical appointments. Defendants argue that Beckman has not established a causal connection between his leave request and any adverse action.[1] Beckman alleges that soon after he made his March medical leave request, management began to subject him to more criticism and

[1] Although a request for a disability-related accommodation can qualify as protected activity under the ADA, *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013), it appears that "a request for an accommodation under PWDCRA is not protected activity for purposes of stating a claim for retaliation because it does not charge a violation" of the statute. *MacDonald v. United Parcel Serv.*, 430 F. App'x 453, 463 (6th Cir. 2011) (citing *Bachman v. Swan Harbour Ass'n*, 653 N.W.2d 415, 437–38 (Mich. Ct. App. 2002)). However, because FNBOA expressly accepts for purposes of its motion that Beckman's leave request constituted protected activity under the PWDCRA, the Court declines to address this issue.

scrutiny, and less than two weeks later, he was fired. Although the temporal proximity is a bit weaker here than for Beckman's other claims, the causal inference is strengthened by the fact that FNBOA did not even address Beckman's accommodations request or begin the process for doing so. These allegations, taken together, are sufficient to create an inference of retaliatory motive.

*FLSA*. Finally, Beckman argues that he engaged in protected activity under the FLSA by reporting to Hansen that he had not been paid for attending a training lunch. "To fall within the scope of the [FLSA] antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011). Although Beckman's allegations are not entirely clear, drawing reasonable inferences in his favor, it appears that his claim regarding pay during a training lunch was one for failure to pay overtime under the FLSA. By raising this issue with Hansen, Beckman put FNBOA on notice that he was opposing an alleged violation of the FLSA. And because FNBOA fired him later that day, one can reasonably infer that FNBOA was motivated by his protected conduct.

## IV. CONCLUSION

In sum, Beckman has stated a claim for retaliation under the ELCRA, § 1981, Title VII, the ADA, the PWDCRA and the FLSA. The Court will therefore deny FNBOA's motion to dismiss.

An order will enter in accordance with this Opinion.

Dated: September 23, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE